IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA KASS,<br><br>      Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO,<br><br>      Defendant. | Case No. 17-cv-6497<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Maria Valdez |

## DEFENDANT'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant, The University of Chicago (the "University") by and through its attorneys, Franczek Radelet P.C., hereby submits Defendant's Answer to Plaintiff's Complaint and states as follows:

## INTRODUCTION

1. On April 26, 2017, Plaintiff Barbara Kass's ("Kass") employment with Defendant The University of Chicago ("UofC") was terminated as a direct result of her objections to and refusal to participate in the scheme to prepare and submit a false and misleading departmental budget that included unlawful use and allocation of federal grant money. Thus, this is an action by Kass for retaliatory discharge in violation of the federal False Claims Act, in violation of Illinois state law (common law and statute), and UofC's own whistleblower policy.

**ANSWER:** Defendant admits only that Plaintiff purports to assert claims under the False Claims Act and Illinois state law. Defendant denies that Plaintiff's employment with Defendant was terminated as a direct result of her alleged objections to and refusal to participate in a purported scheme to prepare and submit a false and misleading departmental budget. Defendant specifically denies violating the False Claims Act, Illinois state law, Defendant's own policy, or any other law and denies the remaining allegations of Paragraph 1.

2353942.7

## PARTIES

2. Plaintiff is a citizen and resident of the State of Indiana.

**ANSWER:** On information and belief, Defendant admits the allegations of Paragraph 2.

3. Defendant is a private not-for-profit university incorporated in Illinois. Defendant's campuses and business are located principally in Chicago, Illinois.

**ANSWER:** Defendant admits the allegations of Paragraph 3.

## JURISDICTION AND VENUE

4. This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33, and also under state statutory and common law theories of wrongful termination and breach of contract. This court has jurisdiction over this action under 28 U.S.C. §§ 1331. This Court has supplemental subject matter jurisdiction over Plaintiff' s state law claims under 28 U.S.C. §1367.

**ANSWER:** Defendant admits that Plaintiff is asserting the claims referred to in Paragraph 4 and admits that this Court has jurisdiction over this action as set forth in Paragraph 4. Defendant denies that it has violated any law or breached any contract and denies the remaining allegations of Paragraph 4.

5. The Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as this is a dispute between citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:** Defendant admits the allegations of Paragraph 5.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. §3732(a), because UofC (I) resides in this district; (ii) transacts business in this district and did so at all times relevant to this complaint; and, as alleged below, (iii) committed acts giving rise to this action within this district.

**ANSWER:** Defendant admits that venue is proper in the Northern District of Illinois and that Plaintiff alleges that Defendant engaged in the acts referred to in Paragraph 6 within the District. Defendant denies that it engaged in any acts giving rise to this action and denies the remaining allegations of Paragraph 6.

## GENERAL ALLEGATIONS

**The Parties**

7. UofC is a private university which is comprised of a number of undergraduate and graduate units. In addition to educating students, UofC also conducts scientific research which is largely funded by federal grants.

**ANSWER:** Defendant admits that it is a private university, that it includes but is not limited to undergraduate and graduate units, that in addition to educating students it conducts scientific research, and that a significant portion of its sponsored research funding comes from federal grants.

8. UofC is a grantee institution which has received grant money from numerous federal agencies to conduct a wide range of research activities. Each federal grant has terms and conditions with a defined scope and duration which grantees agree to upon receipt of funds. At UofC, each grant is managed separately and a qualified researcher is designated by the UofC to serve as the grant's Principle Investigator ("PI"). The PI directs the project or activity being supported by the grant. The PI is responsible and accountable to the grantee (here, UofC) and the grant's issuing agency (the relevant federal agency) for the proper conduct of the project or activity, including compliance with the all terms of the grant and specifically how the federal grant money is spent and accounted for.

**ANSWER:** Defendant admits that it is a grantee institution that has received grant money from certain federal agencies to conduct a wide range of research activities. Defendant further admits that, as to each federal grant of which it is a beneficiary, it has agreed to certain terms and conditions and a defined scope and duration, many of which include assignment of a Principal Investigator ("PI"), who directs the project and is accountable to the grantee and issuing agency for conduct of the grant and compliance with grant terms. Defendant denies the remaining allegations of Paragraph 8.

9. Until her termination on April 26, 2017, Kass was employed by UofC in the position of Executive Administrator of the Department of Public Health Sciences, the Department of Family Medicine and VP for Administration of UChicago Research Bangladesh, LLC. The role in the Department of Public Health Sciences (the "Department") started in 1996, with additional responsibilities added for the Department of Family Medicine in 2007 and UChicago Research Bangladesh, LLC, in 2009.

3

**ANSWER:** Defendant admits that Plaintiff was employed by Defendant as Executive Administrator of the Department of Public Health Sciences beginning in 1996 and of the Department of Family Medicine beginning in 2007 and as Vice President of UChicago Research Bangladesh, LLC beginning in or about 2013. Defendant denies the remaining allegations of Paragraph 9.

10. Ms. Kass's immediate supervisor was Diane Lauderdale. Ms. Lauderdale was the Chair of the Department of Public Health Sciences. Ms. Lauderdale was a PI of her own grant funds, was informed of and educated on both institutional policies and federal grant compliance regulations.

**ANSWER:** Defendant admits the allegations of Paragraph 10.

11. Kass was employed continuously by UofC for nearly 36 years.

**ANSWER:** Defendant admits the allegations of Paragraph 11.

12. Kass's employee file is bereft of any indication that her performance was wanting. Kass's performance reviews were all positive. At no time in her 36 years at UofC was Kass formally or informally, in writing or otherwise, informed by UofC that her performance was less than satisfactory. Indeed, UofC's actions with respect to Kass's pay, promotions, and responsibilities were always consistent with a conclusion that her performance was exemplary. The lack of any negative feedback from UofC and its failure to provide any counseling at any time to Kass to improve any perceived performance issues belies the baseless assertions that Kass was terminated for poor performance.

**ANSWER:** Defendant admits that Plaintiff received positive performance reviews. Defendant denies the remaining allegations of Paragraph 12.

13. Among Kass's many responsibilities was assisting PIs with pre-award grant budgets and post-award financial management of funded projects.

**ANSWER:** Defendant denies the allegations of Paragraph 13.

14. One of the PIs Kass was charged with assisting was Habibul Ahsan.

**ANSWER:** Defendant denies the allegations of Paragraph 14.

15. During her tenure of nearly 36 years, UofC recognized Kass as a highly competent, valuable, and trusted employee with specialty training and expertise in managing federal grants. UofC consistently and frequently took actions that demonstrated the high level of trust it placed on Kass.

**ANSWER:** Defendant admits that Plaintiff held a position in which she was entrusted with significant responsibilities and that she was assigned or took on additional responsibilities at times in her career. Defendant denies the remaining allegations of Paragraph 15.

16. In her position, Kass managed three separate UofC units in multiple locations, domestically and internationally. Her responsibilities beyond assisting PIs with pre- and post-award grant management included unit budget preparations and oversight, personnel management and regulatory compliance. UofC also gave Kass special project assignments and appointments to UofC Medicine high--level committees where she served among peers who similarly had earned the highest level of trust and reputation for upholding UofC's stature as a home for world class research, clinical care, and education.

**ANSWER:** Defendant admits that Plaintiff had responsibilities relating to unit budget preparations and oversight and personnel management for the Department of Public Health and the Department of Family Medicine, that Plaintiff co-led an Executive Administrator initiative in basic sciences, and that Plaintiff served on one or more committees along with other personnel. Defendant denies the remaining allegations of Paragraph 16.

17. Kass was known by leaders and peers throughout UofC, the affiliated NorthShore University Health System and UChicago Research Bangladesh to be a role model of impeccable integrity, highly trustworthy, and at all times deeply loyal to UofC and its research mission.

**ANSWER:** Defendant denies the allegations of Paragraph 17.

18. Kass was given additional, significant responsibilities that were above and beyond the normal responsibilities of other Executive Administrators, demonstrating that UofC recognized Kass's value as one of its highest-performing employees. This was further evidenced by UofC giving Kass yearly merit-based salary increases, as well as promotions and commensurate raises.

**ANSWER:** Defendant denies the allegations of Paragraph 18.

**Kass's Wrongful Termination**

19. On April 26, 2017, without warning, notice or indication of any kind, UofC abruptly terminated Kass's employment. While UofC falsely claimed that her termination was performance-based, the facts leading up to her termination establish a much different and unlawful reason.

5

**ANSWER:** Defendant admits that it terminated Plaintiff's employment on April 26, 2017. Defendant denies the remaining allegations in Paragraph 19.

20. As the facts demonstrate, Kass was terminated as a direct result of her objections to and refusal to participate in the scheme sanctioned and perpetuated by Ms. Lauderdale and Mr. Ahsan to prepare and submit to UofC a false and misleading departmental budget that included unlawful use and allocation of federal grant money and falsify official grant repo1ts to the federal government. The further demonstrable facts establish that UofC' s decision to terminate Kass was unlawful and in retaliation for Kass' s efforts to adhere to federal law and UofC policy related to accounting for federal grant money.

**ANSWER:** Defendant denies the allegations of Paragraph 20.

21. Specifically, Ms. Lauderdale and Mr. Ahsan instructed federal grant moneys that had been awarded to one project be used to make up a budgetary shortfall in other projects. Federal law prohibits these types of budgetary schemes whereby expenses are transferred between awards for the purpose of overcoming fund deficiencies elsewhere.

**ANSWER:** Defendant admits that federal law restricts use of federal grant funding to purposes authorized by the terms of the grant. Defendant denies the remaining allegations of Paragraph 21.

**Ms. Lauderdale and Ahsan's Unlawful Budgetary Scheme**

22. As early as March 2016, Kass and her staff informed Ms. Lauderdale in clear terms that they had been instructed by Mr. Ahsan, and those acting on his behalf, to initiate unjustified and unlawful account entries to charge salary and other expenses from his project which had depleted the allocated funding to that of federally funded projects of Mr. Brandon Pierce, a junior faculty researcher for whom Mr. Ahsan was his mentor.

**ANSWER:** Defendant denies the allegations of Paragraph 22.

23. Kass expected, consistent with UofC's whistleblower policy, that passing on the factual information she and her staff received internally up to the next level of superiors would have resulted in their concerns being investigated and appropriate actions taken in response to avert federal fraud and violation of University policies.

**ANSWER:** Defendant denies that Kass passed on the alleged "factual information," and denies the remaining allegations of Paragraph 23.

24. Instead, Ms. Lauderdale showed disdain toward her staff's complaints that they had been instructed to complete transactions that would violate federal grant rules and would violate institutional policies they were entrusted to uphold.

**ANSWER:** Defendant denies that Kass or her staff made any such complaints and therefore denies the allegations of Paragraph 24.

25. Mr. Ahsan's fiscal 2016 budget deficit was resolved in mid 2016 with authorization from Ms. Robin Honig, Interim VP of Clinical Finance/Associate Dean of Finance and Administration for the Division of Biological Sciences to utilize unspent non-grant fund balances elsewhere in the Department to fund the over-budget expenses of Mr. Ahsan's programs. This averted an otherwise imminent whistleblower disclosure by Kass and her staff. Ms. Honig instructed both Kass and Ms. Lauderdale that the solution provided was a one-time reprieve of Mr. Ahsan's over-spending and going forward Mr. Ahsan would be expected to scale back his research operation or formally seek bridge funding. Mr. Ahsan and staff acting on his behalf were apprised accordingly at the start of fiscal year 2017.

**ANSWER:** Defendant admits that during Fiscal Year 2016, additional Departmental funds were authorized to cover certain unanticipated expenses related to one of the research programs overseen by Dr. Ahsan. Defendant denies the remaining allegations of Paragraph 25.

26. In Autumn 2016, the fiscal year first quarter financial reports became available and were presented to both Ms. Lauderdale and Kass by Kass's staff. The financial statements and related documentation demonstrated that Mr. Ahsan bad failed to comply with the terms stated three months earlier to keep his spending within approved budget levels and continued his attempts to impose his expenses onto the projects of Mr. Pierce.

**ANSWER:** Defendant denies the allegations of Paragraph 26.

27. Mr. Ahsan and those working on his behalf again requested that Kass and her staff shift Mr. Ahsan's expenses to the funded projects of Mr. Pierce rather than follow the lawful fiscal advice Kass had given him the year before.

**ANSWER:** Defendant denies the allegations of Paragraph 27.

28. Through early 2017, Kass's reports and those provided by her staff directly to Ms. Lauderdale continued regarding Mr. Ahsan's unlawful budget deficit solution requests. These reports specified that honoring Mr. Ahsan's requests would violate federal budget reporting laws and UofC's policies.

**ANSWER:** Defendant denies the allegations of Paragraph 28.

29. Kass and her staff requested that Ms. Lauderdale intervene in her role as Chair of the Department in a manner that would protect the interests of Mr. Pierce and avert any violations of University policy or federal grant regulations. Ms. Lauderdale refused to do so.

**ANSWER:** Defendant denies the allegations of Paragraph 29.

30. In early 2017, at the time the annual departmental draft budget was due, during the preparations of the current fiscal year financial year-end estimates and review of those reports with Ms. Lauderdale, Kass sustained her unwillingness to endorse any of the requested financial improprieties Mr. Ahsan had requested in order to have his financial situation appear more favorable.

**ANSWER:** Defendant denies the allegations of Paragraph 30.

31. Kass submitted the departmental financial reports to the divisional budget office void of content that would have constituted the unlawful misuse of federal grant funds. The reports reflected a balanced fiscal year end Kass believed would be achieved had Mr. Ahsan received approval for sufficient bridge funding Mr. Ahsan had assured Kass was forthcoming.

**ANSWER:** Defendant admits that Plaintiff submitted departmental financial reports to the divisional budget office without content that would have constituted the unlawful misuse of federal grant funds. Defendant denies that Plaintiff's reports reflected a balanced budget and denies the remaining allegations of Paragraph 31.

32. Ms. Lauderdale once again denounced Kass's efforts and persistence to seek alternative solutions. Ms. Lauderdale dismissed the evidence Kass had submitted that Mr. Ahsan's requests were unlawful and fraudulent. Instead, Ms. Lauderdale endorsed the illegal budgetary scheme.

**ANSWER:** Defendant denies the allegations of Paragraph 32.

33. During the review process that ensued by the budget office staff, Kass informed the Biological Sciences Division's Director of Budget and Financial Analysis, Lori Halpern during multiple conversations that she had encountered a serious compliance matter within the department significantly impacting the budget submission what was evolving into a whistleblower policy situation. Kass further explained that the version she submitted only included transactions that did not violate University policy or any federal grant regulations and thus reflected the truthful knowledge that Mr. Ahsan's expenses he insisted were essential to support his program exceeded his approved budget for the year.

**ANSWER:** Defendant denies the allegations of Paragraph 33.

34. Despite Kass sharing her concerns and unwillingness to condone the illegal activity to mask the degree of Mr. Ahsan's budget overruns, Kass was instructed by Ms. Halpern to find a way to present a balanced fiscal year-end report to divisional leadership.

2353942.7

**ANSWER:** Defendant admits that Ms. Halpern instructed Plaintiff to present a balanced budget. Defendant denies that Plaintiff expressed concern over any allegedly illegal activity and denies the remaining allegations of Paragraph 34.

35. Despite sharing her concerns and unwillingness to condone the illegal activity, Ms. Halpern and her staff conveyed to both Kass and Ms. Lauderdale that they had concerns over the size of the overdraft that was projected for Mr. Ahsan's research activities for the current year and did not expect the amount of bridge funding he would require would be affordable by the division.

**ANSWER:** Defendant admits that Ms. Halpern and her staff expressed concern over the size of the budget deficit. Defendant denies the remaining allegations of Paragraph 35.

36. Shortly after receiving this news, Ms. Lauderdale ended her resistance to Kass's requests for her involvement in addressing Mr. Ahsan's financial schemes. However, rather than intervene as requested by Kass to support and uphold the departmental staff's adherence to University policy and federal grant regulations, Ms. Lauderdale proceeded to denounce Kass's efforts to seek alternative legal solutions and instead explicitly endorsed the illegal budgetary scheme of shifting Mr. Ahsan's laboratory personnel expenses to Mr. Pierce's projects.

**ANSWER:** Defendant denies the allegations of Paragraph 36.

37. Kass and her staff recorded all the instructions issued by Ms. Lauderdale. After a thorough review of the instructions, the financial staff rejected the after-the-fact revisions Ms. Lauderdale had requested because doing so would have violated University policy. In addition, Ms. Lauderdale's requests would have contradicted the verifications that had already been recorded in the university's accounting system and verified by the PIs as corresponding to other projects.

**ANSWER:** Defendant denies the allegations of Paragraph 37.

38. Some changes requested by Ms. Lauderdale would have required retracting and revising documents previously prepared and submitted by the PI (Mr. Pierce) regarding his Research Project-Cooperative Agreement which were already in the possession of the federal funding agency - the National Institutes of Health's National Human Genome Research Institute (NHGRI) - which was supporting Mr. Pierce's research work.

**ANSWER:** Defendant denies that Ms. Lauderdale requested any such changes and therefore denies the remaining allegations of Paragraph 38.

39. Despite repeating her concerns and unwillingness to condone the illegal activity believing it was her responsibility to present honest and transparent financial data, Kass was instructed by Ms. Halpern on behalf of Mumtaz Darbar, the Vice Dean for Administration and

Finance, to follow Ms. Lauderdale's and Mr. Ahsan's instructions to improve the financial forecast and further added a warning that it would be in Kass's best interest to participate in the coverup to keep Dr. Kenneth S. Polonsky from learning of the budgetary scheme to mask the actual amount of financial deficit incurred by Mr. Ahsan. Dr. Polonksy was the Dean of the Biological Sciences Division.

**ANSWER:** Defendant denies the allegations of Paragraph 39.

40. Kass felt verbally threatened by the repeated warnings she received from Ms. Halpern of imminent undesirable employment outcome should she fail to participate in the scheme and its coverup. Despite these threats and failure by her superiors to follow the organization's whistleblower policy, Kass steadfastly refused to participate in and objected to the illegal scheme concocted by Mr. Ahsan and sanctioned by Ms. Lauderdale and the divisional leadership staff, Ms. Darbar and Ms. Halpern.

**ANSWER:** Defendant denies the allegations of Paragraph 40.

41. Kass's termination on April 26, 2017 was just hours before her scheduled attendance at a budget presentation meeting representing the Department with Ms. Lauderdale at which meeting she would have informed Dr. Polonsky (the next higher level of authority than the Chair of the Department) of the scheme by Kass's superiors to violate federal grant provisions in order to achieve a "balanced budget."

**ANSWER:** Defendant admits that Plaintiff was terminated on April 26, 2017, the same date as Plaintiff was scheduled to attend a budget presentation meeting with Ms. Lauderdale and Dr. Polonsky. Defendant denies the remaining allegations of Paragraph 41.

42. Kass was at all times sensitive to the desire to present the Department in the best light possible, her responsibilities to be supportive of her Chair, and her job responsibility of solving unexpected and difficult problems. However, Kass reasonably believed that complying with the instructions of Ms. Lauderdale and Mr. Ahsan to use federal grant moneys from another, unrelated project to pay for the excessive expenses of his project, would violate federal law and UofC policy. Therefore, Kass continued to work to reach a different solution that would balance the budget within university and grant policy regulations.

**ANSWER:** Defendant denies the allegations of Paragraph 42.

43. The scheme mandated by Ms. Lauderdale and Mr. Ahsan for administrative staff to implement would have defrauded the federal government. It is unlawful and contrary to UofC policy to employ the budgetary gimmick proposed by Ms. Lauderdale and Mr. Ahsan to hide their research mismanagement of one grant project by using moneys allocated to another grant project or moneys allocated to unfunded research activities. In the weeks and months prior to her termination, Kass's efforts were consistently focused on complying with federal law, upholding the policies of UofC, and maintaining UofC's stellar reputation as a federal grantee, just as they had been throughout her long and successful career.

10

**ANSWER:** Defendant denies the allegations of Paragraph 43.

44. Based upon the foregoing facts, UofC knowingly terminated Kass in retaliation for her refusal to take part in an unlawful scheme that would have covered up mismanagement by both Ms. Lauderdale and Mr. Ahsan and mask the resultant budgetary shortfalls that their mismanagement created.

**ANSWER:** Defendant denies the allegations of Paragraph 44.

45. Compliance with Ms. Lauderdale and Mr. Ahsan's scheme would have violated federal grant law, federal grant regulations, and UofC policy. Kass's superiors were, at all relevant times, aware, because Kass and her staff had told them, that the proposed budgetary schemes were unlawful, in violation of terms of specific grant awards impacted, and in direct violation of UofC policy.

**ANSWER:** Defendant denies the allegations of Paragraph 45.

46. For Kass's superiors who were not PIs or research administrators educated in the rules and regulations of managing federal grant funds Kass took care to assure they were made aware the impact of the reported improprieties would result in a whistleblower situation.

**ANSWER:** Defendant denies the allegations of Paragraph 46.

### COUNT I
### (Retaliatory Discharge - 31 U.S.C. § 3730(h))

47. Kass realleges paragraphs 1-46 as paragraph 47 as if fully set forth herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 46 by reference as if set forth fully here.

48. Section 3730(h)(l) of the federal False Claims Act provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(l).

**ANSWER:** Defendant admits the allegations of Paragraph 48.

11

49. Kass's alleged actions were taken in furtherance of an action under the False Claims Act or other efforts to stop one or more violations of the False Claims Act.

**ANSWER:** Defendant denies the allegations of Paragraph 49.

50. UofC knew that Kass's actions were taken in furtherance of an action under the False Claims Act or other efforts to stop one or more violations of the False Claims Act.

**ANSWER:** Defendant denies the allegations of Paragraph 50.

51. Kass's employment was termination was motivated, at least in part, by Kass's protected conduct.

**ANSWER:** Defendant denies the allegations of Paragraph 51.

52. UofC's termination of Kass directly violated 31 U.S.C. § 3730(h)(l) because it was in retaliation for her efforts to stop a violation of the federal False Claims Act.

**ANSWER:** Defendant denies the allegations of Paragraph 52.

53. As a result of UofC's wrongful conduct, Kass has suffered damages in the form of lost wages, health benefits, pension benefits, and has incurred costs including, but not limited to, attorneys' fees and litigation costs.

**ANSWER:** Defendant denies the allegations of Paragraph 53.

WHEREFORE, Plaintiff Barbara Kass requests that this Court enter judgment in her favor and against Defendant University of Chicago as follows:

    a. reinstatement with the same seniority status that Kass would have had but for UofC's wrongful conduct;

    b. twice the amount of Kass's lost back pay, interest on the back pay, and compensation for any special damages sustained but for UofC's wrongful conduct, including, but not limited to attorneys' fees and litigation costs;

    c. such other and further relief as this Court finds just and equitable.

**ANSWER:** Defendant denies that Plaintiff is entitled to any of the requested relief.

## COUNT II
### (Retaliatory Discharge - 740 ILCS 174/20)

54. Kass realleges paragraphs 1-53 as paragraph 54 as if fully set forth herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 53 here by reference.

55. Section 174/20 of the Illinois Whistleblower Act provides:

> An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act.

740 ILCS 174/20.

**ANSWER:** Defendant admits the allegations of Paragraph 55.

56. UofC's termination of Kass directly violated 740 ILCS 174/20 because it was in retaliation for her efforts to stop a violation of the federal Whistle Blower Act.

**ANSWER:** Defendant denies the allegations of Paragraph 56.

57. As a result of UofC's wrongful conduct, Kass has suffered damages in the form of lost wages, health benefits, pension benefits, and has incurred costs including, but not limited to, attorneys' fees and litigation costs.

**ANSWER:** Defendant denies the allegations of Paragraph 57.

WHEREFORE, Plaintiff Barbara Kass requests that this Court enter judgment in her favor and against Defendant University of Chicago as follows:

    a. reinstatement with the same seniority status that Kass would have bad but for UofC's wrongful conduct;

    b. back pay with interest;

    c. compensation for any special damages sustained but for UofC 's wrongful conduct, including, but not limited to attorneys' fees and litigation costs;

    d. such other and further relief as this Com1 finds just and equitable.

**ANSWER:** Defendant denies that Plaintiff is entitled to any of the requested relief.

### COUNT III
### (Retaliatory Discharge - Breach of Contract)

58. Kass realleges paragraphs 1-46 as paragraph 58 as if fully set forth herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 46 here by reference.

59. The UofC Human Resources Policy Guidelines was part of the employment agreement between Kass and UofC.

**ANSWER:** Defendant denies the allegations of Paragraph 59.

60. Section Ul03 (Whistleblower) of UofC's Human Resources Policy Guidelines provides:

> The University relies on its employees to perform their duties and responsibilities in accordance with the University's policies and procedures. The University provides various mechanisms to assist and encourage employees to come forward in good faith with reports or concerns about suspected compliance issues. Employees may report suspected non-compliance issues without fear of reprisal or retaliation.

**ANSWER:** Defendant admits the allegations of Paragraph 60.

61. UofC's termination of Kass directly violated Section Ul03 of the UofC's Human Resources Policy Guidelines.

**ANSWER:** Defendant denies the allegations of Paragraph 61.

62. By violating Section U103 of the UofC's Human Resources Policy Guidelines, UofC breached the employment agreement between it and Kass.

**ANSWER:** Defendant denies the allegations of Paragraph 62.

63. Kass performed all conditions of her employment at all times prior to her termination.

**ANSWER:** Defendant denies the allegations of Paragraph 63.

64. As a result of UofC's wrongful conduct, Kass has suffered damages in the form of lost wages, health benefits, and pension benefits.

**ANSWER:** Defendant denies the allegations of Paragraph 64.

WHEREFORE, Plaintiff Barbara Kass requests that this Court enter judgment in her favor and against Defendant University of Chicago in an amount to be determined at trial and such other and further relief as this Court finds just and equitable.

**ANSWER:** Defendant denies that Plaintiff is entitled to any relief.

## COUNT IV
### (Wrongful Termination)

65. Kass realleges paragraphs 1-53 as paragraph 65 as if fully set forth herein.

**ANSWER:** Defendant incorporates its responses to Paragraphs 1 through 53 here by reference.

66. UofC's termination of Kass was wrongful in that it was against public policy by violating the protections afforded by federal and Illinois state law afforded to whistleblowers.

**ANSWER:** Defendant denies the allegations of Paragraph 66.

67. UofC's actions in light of the public policy expressed in the federal False Claims Act and the Illinois Whistleblower Act were willful and wanton and are characterized by oppression and malice is the gist of the action such that punitive damages are appropriate to deter such conduct in the future.

**ANSWER:** Defendant denies the allegations of Paragraph 67.

68. As a proximate result of UofC's wrongful conduct, Kass has suffered damages in the form of lost wages, health benefits, pension benefits, and has incurred costs including, but not limited to, attorneys' fees and litigation costs.

**ANSWER:** Defendant denies the allegations of Paragraph 68.

WHEREFORE, Plaintiff Barbara Kass requests that this Court enter judgment in her favor and against Defendant University of Chicago in an amount to be determined at trial and such other and further relief as this Court finds just and equitable.

**ANSWER:** Defendant denies Plaintiff is entitled to any relief.

### AFFIRMATIVE DEFENSES

1. Plaintiff's damages should be barred or reduced to the extent that Plaintiff failed to properly mitigate her damages by, among other things, making reasonable efforts to secure alternative employment following her separation from employment with Defendant.

2. To the extent that Plaintiff adequately mitigated her damages, any damages awarded to Plaintiff must be reduced by the amount of any substitute income received by Plaintiff.

Defendant expressly reserves the right to rely upon any additional defenses that may become available or apparent during the proceedings in this matter and hereby reserves its right to amend their answer and assert any such defenses.

           Respectfully submitted,

           THE UNIVERSITY OF CHICAGO


           By: __/s/ Karen L. Courtheoux_____
                One of Their Attorneys


Jeffrey Nowak (#06270364)
William R. Pokorny (#06275705)
Karen L. Courtheoux (#06303103)
Franczek Radelet P.C.
300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606
(312) 986-0300

Dated: November 3, 2017

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused the foregoing **Defendant's Answer and Affirmative Defenses to Complaint** with the Clerk of the Court by using the CM/ECF system this 3rd day of November, 2017, and that service will be accomplished by the CM/ECF system to counsel of record:

>David H. Latham
>Latham Law Offices
>150 North Wacker Drive
>Suite 1400
>Chicago, Illinois 60606
>(312) 782-1910


_____s/ Karen L. Courtheoux_____

2353942.7