IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA KASS, | Case No. 17-cv-6497 |
| Plaintiff, | |
| v. | Judge Robert W. Gettleman |
| THE UNIVERSITY OF CHICAGO, | Magistrate Judge Maria Valdez |
| Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Barbara Kass was formerly employed by Defendant, the University of Chicago, as Executive Administrator of the Department of Public Health Sciences, which is part of the University's Biological Sciences Division. Kass alleges that in Fiscal Years 2016 and 2017, she objected to efforts by one researcher, Dr. Habibul Ahsan, to shift certain expenses from his own federally-funded research projects to the federally funded research projects of another researcher, Dr. Brandon Pierce. Kass maintains that she was fired for her opposition to this "scheme," and that her discharge violated the federal False Claims Act and the Illinois Whistleblower Act.

While Kass's whistleblower allegations in the Complaint are specific and narrow in scope, her discovery requests in this case have been anything but. Kass has demanded that the University produce not just documents relating to the particular staff expenses that she maintains Dr. Ahsan improperly sought to shift to Dr. Pierce's grants, but essentially every document relating to every research project for which Dr. Ahsan or Dr. Pierce served as the Principal Investigator over a two-year period, and for good measure nearly every other document relating to the administration of the Public Health Sciences ("PHS") Department in 2017. Despite several communications with Plaintiff's counsel regarding the sweeping scope of Plaintiff's requests, the Parties have been unable to reach agreement on the appropriate scope of Plaintiff's discovery

2481483.1

requests. As Plaintiff's requests are patently overbroad and unduly burdensome, Defendant respectfully asks the Court to deny Plaintiff's Motion to Compel.

## I. Status of Discovery

As Plaintiff notes, she served her initial document requests on November 29, 2017. The University served its initial objections and responses to Plaintiff's requests on December 29, 2017. After an initial exchange of correspondence and Rule 37.1 telephone conference with opposing counsel, Defendant made its initial production of documents available to opposing counsel on January 19, 2018, Bates numbered UOC_Kass 0000001-1477.[1]

Defendant completed a second production on February 9, 2018, including documents Bates numbered UOC_Kass 0001478-2623. On that date, Defendant's counsel sent letter to Plaintiff's counsel setting forth Defendant's position regarding Plaintiff's discovery requests, and providing an amended response to Plaintiff's initial discovery requests. In the e-mail message forwarding Defendant's discovery requests, Defendant's counsel informed Plaintiff's counsel that Defendant would be sending another link from which Plaintiff's counsel could access the additional documents. The link was transmitted to Plaintiff's counsel using the same file sharing system that Plaintiff's counsel previously used to download Defendant's first production. Plaintiff's counsel did not inform Defendant's counsel that he did not receive the link. After reading Plaintiffs' Motion, in which Plaintiff represents that she received only one production, Defendants' counsel sent another e-mail to Plaintiff's counsel once again providing the link to

---

[1] Plaintiff maintains in her motion that Defendant did not serve its initial production until January 31, 2018. That is not accurate. Defendant's documents were made available to opposing counsel via a link to defense counsel's secure file sharing platform on January 19, 2018. Plaintiff's counsel was also notified of this in a separate e-mail. On January 22, 2018, Plaintiff's replied to the e-mail from Defendant's counsel, stating that he did not see the link, and suggesting that it may have gone into his spam folder. Defendant's counsel responded on the same day by forwarding the link again. Although Plaintiff's counsel received the link on January 22, 2018, he did not access Defendant's production until January 31, 2018.

Defendant's second production. Plaintiff's counsel has been able to access and download the additional documents.

## II. Discovery Standard

Fed. R. Civ. P. 26(b)(1) provides that a party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

## III. Plaintiff's Requests

**Requests 5 and 8.**

Plaintiff first takes issue with the University's responses to Requests 5 and 8 by stating that the University has "unreasonably limited its production to communications while the request asks for all Documents." As to Request 5, Plaintiff specifically *asks* for documents relating to "communications," so the basis for Plaintiff's objection is unclear.

As to Request 8, the University will clarify that it does not intend to limit its response to "communications," although it anticipates (and Plaintiff seems to agree) that most if not all of the responsive documents will constitute "communications."

However, it is apparent from the remainder of Plaintiff's Motion that the Parties have widely disparate views as to what "documents" (including but not limited to communications" fall within the subject matters at issue in the case – and particularly, what documents relate to Plaintiff's whistleblower allegations. These matters are addressed in response to Plaintiff's more specific requests below.

**Request 19.**

Request 19 seeks "effort reports" for staff who worked on grant-funded research programs where Dr. Ahsan or Dr. Pierce were the Principal Investigators. When University personnel work on a federally-funded research project, federal grant funds can be used to cover the cost of their compensation only in proportion to the effort that they put in on the approved project. The University tracks and annually certifies the amount of staff effort allocated to each federal grant.

On February 9, the University produced copies of the Payroll Verification Reports for Dr. Pierce's and Dr. Ahsan's federal grant programs, which identify all employees whose compensation was charged to those grants. The University has also agreed to produce additional effort reporting documents, if any, for those employees whose effort Plaintiff maintains was improperly allocated to a grant of Dr. Pierce or Dr. Ahsan, once such individuals were identified by Plaintiff. Plaintiff provided the requested names via e-mail on February 23, 2018. Defendant is investigating to determine whether there are any further documents to be produced for the named individuals.

Despite the University's agreement to provide the requested reports for the individuals who Plaintiff has identified, Plaintiff insists that she needs the same documentation for every employee who worked on grant-funded research programs of Dr. Pierce or Dr. Ahsan, because she may not recall some of the names. The Payroll Verification Reports already produced to Plaintiff should be adequate for this purpose. Additional effort reporting documentation for other employees would have no relevance to Plaintiff's claims.

**Request 20.** All Documents constituting or relating to project scope, budgets, cost-sharing or other institutional support commitment letters, financial reports and materials provided to the funding agency or prime awardee, internal budgets and projections, correspondence and meeting notes related to any and all awards active during fiscal years 2016 and 2017 where Ahsan or Pierce were PIs.

**Request 21.** All Documents constituting or relating to project scope, budgets, institutional commitment letters, financial reports and materials, internal budgets and projections, correspondence and meeting notes related to the COMPASS Project managed by the UofC's Cancer Center.

Plaintiff asserts that these requests are narrow in both time and scope because they relate to only two fiscal years and certain specified research programs, and further because they seek only documents that the University is required to keep as part of its standard business practices. Plaintiff's assertion is misleading. The research projects at issue in Requests 21 and 22 are not simple, isolated experiments being conducted by one or two scientists working alone in a lab. Rather, these are complex public health research programs involving multiple researchers and institutions. Plaintiff's requests seek essentially every document relating to the administration of these complex projects, including drafts, e-mails, meeting notes, etc. Collecting and reviewing all of the documents requested would require extraordinary effort. However, exceedingly few of the documents requested would even conceivably be material to Plaintiff's claims in this case. Plaintiff has made no effort to tailor her requests to her specific claims, such as by identifying the specific records or reports she maintains would evidence the "scheme" alleged in her Complaint. As the former Executive Administrator of PHS, Plaintiff could presumably do so with ease. Instead, she has elected

**Request 22.** All Documents constituting or relating to personnel effort reports, salary scale determinations, job code classification justifications for both staff and independent contractors of the Precision Medicine Initiative (PMI) award, COMPASS project, and the Cancer Center ERRC (Epidemiology and Research Recruitment Core) for fiscal years 2016 and 2017.

**Request 23.** All Documents constituting or pertaining to the institutional internal audit finding of Ahsan's inequitable pay practices for like positions within the same unit and remediation plan for the academic employee violation (F. Jasmine) identified in FY15-FY16.

As noted above with respect to Request No. 19, Defendant has already provided Payroll Verification Reports for the federally-funded research programs for which Drs. Pierce and Ahsan were Principal Investigators in Fiscal years 2016 and 2017.

5

2481483.1

Plaintiff maintains in her Motion that the documents sought in these requests are relevant to the University's position that Plaintiff violated the University's nepotism policy by arranging a job for her daughter, Randi Kass, without implementing the required control procedures. However, Plaintiff has offered no explanation for that connection, beyond asserting that the University has put these matters at issue. The University has agreed to produce all documents relating to the hiring of Randi Kass, which would include all the communications regarding her rate of compensation and Ms. Kass's (belated) communications with Human Resources regarding the need for a nepotism control plan. Such documents should be sufficient for Plaintiff to test Defendant's rationale for her discharge. The remaining documents sought by Requests 22 and 23 are not material to Plaintiff's claims, and not proportionate to the needs of this case.

**Request 24.** All correspondence from fiscal year 2017 between Kass and the members of the Office of Clinical B. Martell (and Melissa Byrn during Martell's maternity leave absence), Sathoff and other HR representatives, M. Reyes of the Cancer Center (manager of the COMPASS project positions and finances) that pertain to Ahsan's pay practices and variances in pay for like positions elsewhere in the department/division and variance in actual position salaries from original project budgets.

Plaintiff maintains that Request 24 is pertinent to her rebuttal of one of Defendant's stated reasons for her termination, specifically, her role in arranging a job for her daughter in violation of the University's nepotism policy. However, the items sought by Plaintiff's request have no obvious connections to Randi Kass's rate of compensation. In Plaintiff's Motion to Compel, Plaintiff asserts that the communications she seeks will show that Dr. Ahsan manipulated pay rates for other personnel by changing them to independent contractors "so that he could keep their pay below the mandatory minimum wage required by federal and state law." Plaintiff's motion is the first time that Plaintiff has articulated this explanation for Request 24. Defendant is investigating this assertion to determine whether there are any documents relating the issue identified. However, even if there were, the connection to Randi Kass's employment or

compensation remains unclear.

**Request 25.** All Documents, including but not limited to, notes, email, and correspondence related to departmental weekly "leadership meetings" kept by Kass and her direct reports (Crist, DeNormandie, Jones, Thompson, Wachowski) for calendar years 2016 and 2017.

**Request 26.** All e-mail correspondence or other Communications dated on or after January 1, 2015 between Kass and Lauderdale.

In these requests, Plaintiff makes no pretense of limiting her requests for documents to items that are relevant to the claims at issue in her case, seeking all documents relating to weekly leadership meetings for two full calendar years, as well all e-mail correspondence between Kass and Department Chair Diane Lauderdale. Kass asserts that these requests are justified because it would be easier for the University to simply provide all the requested items rather than review them to identify material relevant to her claims or responsive to her other requests. This is not a justification for such a fishing expedition. The fact that Kass may have authored or seen a document during her employment does not in itself make the document relevant to this case. Further, the University intends to review all material that it produces to Kass before production, both to preserve any applicable privileges and to identify potentially relevant information. Additionally, contrary to Kass's assertion, Request 25 seeks documents for all of 2017, including the seven months after Kass's employment was terminated. Kass obviously would not have been party to or played any role in such communications.

As to Request 26, Defendant notes that Plaintiff recently produced approximately 1,800 pages of documents, consisting almost entirely of e-mail messages that Plaintiff apparently retained from her University e-mail account. Defendant suspects that Plaintiff retained the contents of her entire University e-mail account, in which case Plaintiff would already have all the documents responsive to Request 26. However, even if Plaintiff selectively saved and kept only e-mail messages relating to her claims, Plaintiff would presumably have all items

responsive to Request 26 that are conceivably relevant to her claims.

**Request 28.** All correspondence and meeting notes from FY17 related to conversations where any of the following were present and the topic of discussion was Kass and/or Public Health Sciences administrative activities: Lauderdale, Ahsan, Darbar, Polonsky, Honig, Halpern, Saathoff, Lozano-Lott, Wachowski, Miotk, Crist, Kass.

The University has already agreed to produce documents responsive to Request 28 to the extent that such documents relate to communications among the listed individuals regarding decision to terminate Kass's employment, the University's reasons for terminating Kass's employment, or the subject matter of Kass's alleged whistleblower communications, as alleged in the Complaint and Kass's responses to the University's interrogatories. Plaintiff remains unsatisfied with this response, demanding to see *every* document relating to "Public Health Sciences administrative activities" from the listed individuals, who include the Chair of the Department, the Dean of the Division in which PHS resides, HR personnel responsible for PHS, representatives of the Division's finance office who had responsibility for administering PHS finance, and several administrative employees within PHS. While Plaintiff is in a sense correct that it would be "easier" for the University to simply turn over the entire e-mail accounts of each of the listed individuals, that is not what Fed. R. Civ. P. 26 contemplates or requires.

**Request 30.** URB Board Meeting minutes and all other participant notes and directives that relate to the topic and financing of URB becoming compliant as a direct recipient of federal grant funds and financial implications (aka "Federal Funds Readiness Project"), correspondence among Ahsan, Honig, Kass, Ludwig, Singh, Lozano-Lott, Gilliam, Kops, Crist, Wachowski, Miotk, Lauderdale.

Defendant has agreed to produce documents responsive to Request 30 to the extent that it appears that they relate to the alleged grant violations at issue in Plaintiff's Complaint. However, the vast majority of documents called for by Request 30 have no apparent connection to Plaintiff's allegations. Plaintiff asserts again that producing all the documents sought would be less burdensome for the University than attempting to identify the documents that are actually

relevant to her claims, and further that "Kass should be allowed to see all of the documents she has requested and make the case for herself which documents are relevant." Fed. R. Civ. P. 26, provides for discovery of relevant documents, not the right for a party to search through whatever documents it requests on the off chance that it may find something of relevance. Further, identifying all documents related to the broad subjects in Request 30 would not be any less burdensome for the University than conducting a specific search for documents relating to the whistleblower issue alleged in Plaintiff's Complaint.

## IV. Conclusion

Defendant remains willing to work with Plaintiff's counsel to resolve any discovery issues. However, the Parties have reached an impasse due to Plaintiff's patent refusal to limit her production requests to documents relevant to her claims. Defendant therefore respectfully asks the Court to deny Plaintiff's Motion to Compel in its entirety.

Dated: March 5, 2018

Respectfully submitted,

THE UNIVERSITY OF CHICAGO, Defendant

By: ___/s/ *William R. Pokorny*___
      One of its Attorneys

Jeffrey S. Nowak (#06270364)
William R. Pokorny (#06275705)
Franczek Radelet P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 986-0300
jn@franczek.com
wrp@franczek.com

2481483.1

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he filed the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record on March 5, 2018:

David H. Latham
Latham Law Offices
150 North Wacker Drive
Suite 1400
Chicago, IL 60606
dhlatham@lathamlaw.net

                                              /s/ *William R. Pokorny*